[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12247
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2012
JOHN LEY
CLERK

D.C. Docket No. 5:04-cv-00080-CAR

GEORGE W. MCGRIFF,
ERIC EMANUEL WYATT,

                                        Movants - Appellants,

                        versus

ARTHUR P. CHRISTIE,
Individually, and in his Official Capacity as the
Administrator of Houston Medical Center,
ANTHONY L. ALFORD,
Individually, and in his Official Capacity as
Executive Director for Medical Affairs of Houston Medical Center,
DANIEL A. DEIGHTON,
Individually and in his Official Capacity as Chief of Staff and
in his Official Capacity as a Member of the Medical Executive Committee
at Houston Medical Center,
FREDERICK W. JENNART,
Individually, and in his Official Capacity as a member of the
Medical Executive Committee at Houston Medical Center,
DAVID N. HARVEY, Individually, and in his Official Capacity as a
member of the Medical Executive Committee at Houston Medical Center, et al.,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 30, 2012)

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Movants-Appellants George W. McGriff and Eric Emanuel Wyatt ("Counsel") appeal following the final order of the district court granting summary judgment in favor of Defendants-Appellees, in a discrimination suit brought by Plaintiff Russell Adkins, MD. Specifically, Counsel appeal from the district court's earlier order granting the Defendants' motion to disqualify Counsel from representing Dr. Adkins. On appeal, Counsel argue: (1) the Defendants lacked standing to move to disqualify Counsel; (2) the district court erred in applying Georgia Rules of Professional Conduct 1.7 and 1.9; and (3) the district court erred in finding a clear appearance of impropriety warranting disqualification. After thorough review, we affirm.

We review the district court's factual findings in a counsel disqualification case for clear error. Kleiner v. First Nat'l Bank, 751 F.2d 1193, 1207 n.30 (11th Cir.

1985).  We review <u>de novo</u> a district court's application of the Rules of Professional Conduct.  <u>Schlumberger Tech., Inc. v. Wiley</u>, 113 F.3d 1553, 1558 (11th Cir. 1997).[1]

The relevant facts are these.  On July 15, 2003, Dr. Adkins, a urologist, operated on patient Sharon Kornegay at Houston Medical Center ("HMC").  The next day, Ms. Kornegay bled profusely and returned to HMC.  Staff called Dr. Adkins, who informed Ms. Kornegay that he was out of town but would have a doctor see her.  During the next eleven hours, while Ms. Kornegay lay bleeding and in pain, nurses told her that Dr. Adkins was not responding to their pages and did not believe their descriptions of her condition.  They also said they could not call another physician because Dr. Adkins had not asked anyone to cover his patients before he left town.  That evening, urologist Dr. Daniel Deighton arrived and performed another surgery on Ms. Kornegay.  He confirmed that Dr. Adkins had not asked him for coverage.

About two months later, Ms. Kornegay filed a complaint with HMC about the care she had received following an initial surgery Dr. Adkins had performed on her on June 23, 2003, and during her visit on July 16, 2003.  Ms. Kornegay questioned whether Dr. Adkins had engaged in malpractice and described his unavailability, unprofessional conduct, and failure to arrange for a back-up  physician.

---

[1] We review the district court's ruling <u>de novo</u> because the main attorney conduct at issue occurred before the case was filed and was not of a type to disrupt in-court proceedings, and because the decision turned on an application of the Rules.  <u>See</u> <u>Schlumberger</u>, 113 F.3d at 1558.

3

In October 2003, Dr. Adkins's privileges at HMC were summarily suspended on grounds that his practice reflected a pattern of problems regarding: availability and timely response to emergency room call and consultation in-house; timely completion of medical records; compliance with protocol for pre-admission of surgical patients; and attendance of meetings. By way of example, the letter referenced Dr. Adkins's treatment of Sharon Kornegay. Dr. Adkins then called Ms. Kornegay, told her about the suspension and asked to see her complaints. Dr. Adkins advised that they were both victims of race discrimination at HMC, and that she should talk to his attorney. Within days, Dr. Adkins formally secured the legal representation of Counsel.

Counsel then visited the Kornegays. Ms. Kornegay told Counsel that she had contacted a few lawyers about a malpractice claim against Dr. Adkins and that she was uncomfortable talking to Counsel unless he agreed to represent her. Counsel said that Dr. Adkins had done nothing wrong in treating her and that two physicians had confirmed this. Counsel further said that HMC was targeting Dr. Adkins because of his race and that Ms. Kornegay likely also had a race-based claim against HMC. At this point, Counsel suggested that he represent Ms. Kornegay. The Kornegays asked whether Counsel's representation of both Ms. Kornegay and Dr. Adkins would create

4

a conflict of interest, which Counsel denied, reiterating that Dr. Adkins had done nothing wrong. Ms. Kornegay finally agreed to Counsel's representation.[2]

Thereafter, the Kornegays repeatedly expressed concerns to McGriff about whether he suffered from a conflict of interest and about his insistence that she had no malpractice claim against Dr. Adkins. Counsel brought in a nurse to convince Ms. Kornegay that hospital staff had not repeatedly called Dr. Adkins on July 16th, as she believed, and that Dr. Adkins was guilty of no wrongdoing. Counsel never requested a retainer from Ms. Kornegay, never conducted any investigation into the merits of any potential malpractice or abandonment claims, and never advised Ms. Kornegay that she may have potential claims against Dr. Adkins.

About six months after filing this suit, Counsel McGriff told Ms. Kornegay that attorney Dwight Johnson should represent her in her state-court fall claim against HMC, while McGriff would consider moving for her to intervene in Dr. Adkins's federal civil rights case. Ms. Kornegay agreed, and Counsel McGriff later admitted that at this time (late 2004), he was representing Ms. Kornegay "with Mr. Johnson."

Around this time, HMC sought to depose Ms. Kornegay, and Counsel requested that Ms. Kornegay sign a waiver of conflict. Ms. Kornegay, however,

---

[2] Ms. Kornegay then gave Counsel her complaints, which Counsel claimed they did not receive until May 2005. The district court found Ms. Kornegay's testimony more credible on this issue and found that Counsel had them by November 2003. Counsel do not dispute this finding.

5

refused and specifically informed Counsel that the Kornegays did not consent to the use of any of their communications with Counsel in Dr. Adkins's federal litigation. In April 2005, attorney Melanie Webre notified Counsel that the Kornegays had retained new counsel to pursue any claims they had against Dr. Adkins and HMC.[3]

In May 2005, Counsel moved to withdraw from the present case, identifying a conflict of interest that had been created by his joint representation of Dr. Adkins and Ms. Kornegay. In the motion, Counsel cited concerns about Georgia Rules of Professional Conduct 1.7 and 1.9, regarding conflicts of interests between current and former clients, and conceded that withdrawal "was necessary to avoid using confidential information of a former client." The district court granted the motion.

Dr. Adkins secured new representation, but four years later, Dr. Adkins's new counsel was unable to continue due to illness and also withdrew. Counsel then served an Entry of Appearance in this case. The Defendants moved to disqualify Counsel, claiming that the conflict still existed. The district court granted the motion to disqualify, and this timely appeal follows.

First, we are unpersuaded that the Defendants lacked standing to move for Counsel's disqualification. A party who is not a former client of opposing counsel

---

[3] In June 2005, just before her statute of limitations ran, Ms. Kornegay, through the new counsel, sued Dr. Adkins in state court, based on his conduct on July 16th and related issues.

nevertheless has standing to raise the issue of opposing counsel's conflict of interest if there is "a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice." Bernocchi v. Forcucci, 614 S.E.2d 775, 779 (Ga. 2005). As the district court reasoned, it is clearly improper for a lawyer to simultaneously represent two clients when he is unable to maintain loyalty to both clients and may need to breach client confidentiality. Because this circumstance breeds prejudice and delay and undermines the credibility of our judicial system, we agree that the Defendants identified a violation of the Georgia Rules of Professional Conduct severe enough to call into question the fair and efficient administration of justice. Counsel have offered nothing to dispute the seriousness of these allegations.

Counsel argue, however, that the Defendants lack standing to move for disqualification because the Georgia Bar found no "probable cause" to believe that Counsel violated the Georgia Rules of Professional Conduct in this case. However, it is unclear from the record before us exactly what proceedings the Bar held and what evidence it considered. As best as we can tell, Counsel never provided the district court with any documents pertaining to the Bar investigation or hearing (other than brief letters bringing the situation to the Bar's attention, and informing Ms. Weber of

the Bar's one-line finding).[4] On this barren record, we cannot conclude that the Bar's review of the matter diminishes the seriousness of the allegations, or otherwise affects the Defendants' standing to move for Counsel's disqualification.

We next find no merit to Counsel's claim that the district court erred in applying Rule 1.7(a) of the Georgia Rules of Professional Conduct, which provides:

> A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client.

In applying this rule, we assess "the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved." Id. at cmt. 4.

Counsel now argue that the district court clearly erred in finding that the scope of Counsel's representation of Ms. Kornegay included potential claims against Dr.

---

[4] Moreover, the one case involving the Georgia Bar that Counsel cite to, Hook v. Bergen, 649 S.E.2d 313, 317 (Ga. App. 2007), merely mentions in passing that the Bar had rejected a complaint against an attorney; it is unclear what significance the Bar's finding had on the merits of the court case. And as for Counsel's claim that Ms. Kornegay's testimony "clearly refutes" the Defendants' arguments for disqualification, Counsel do not specify which of Ms. Kornegay's testimony does so, and have therefore waived this argument. See Continental Tech. Servs., Inc., v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (holding that a glancing reference without citation to the record or authority does not fairly present an issue to this Court).

Adkins. But, according to Ms. Kornegay's deposition and affidavit, she hired Counsel McGriff in 2003 to represent her "[f]or any and all claims [she] had against [HMC] . . . [a]nd whoever else that [she] had claims against." She advised Counsel that she "wanted to file claims against any and all interested parties that were a part of my treatment or lack thereof on July 15th and 16th, including Dr. Adkins."

This is sufficient clear and convincing evidence in support of the district court's finding that Counsel's former representation of Ms. Kornegay and current representation of Dr. Adkins violated Rule 1.7. Indeed, her testimony clearly supports the finding that Counsel agreed to represent any and all of Ms. Kornegay's claims, including potential ones against Dr. Adkins.[5]

As for Counsel's argument that Ms. Kornegay had no reasonable basis to believe that Counsel would represent her in claims against Dr. Adkins since she knew Counsel represented Dr. Adkins, we are unpersuaded. Rather, she said she knew Dr. Adkins was probably going to hire Counsel, but did not think it had happened yet; and in any event, we cannot assume she knew that Counsel's representation of Dr. Adkins would preclude Counsel's representation of her claims against Dr. Adkins,

---

[5] Counsel's assertion that there was no conflict because Ms. Kornegay had no viable claim against Dr. Adkins is unpersuasive -- especially since, among other things, they admit in the reply brief that issues of fact about a potential malpractice claim exist.

since she believed Counsel was representing <u>any and all</u> of her claims, and since counsel repeatedly reassured her that no conflict of interest existed.

We are also unpersuaded that the fact that Ms. Kornegay might have given testimony favorable to Dr. Adkins resolved any conflict in their representation of both the Kornegays and Dr. Adkins. In fact, Counsel acknowledge that "Ms. Kornegay may have provided testimony that could be construed as unfavorable" to Dr. Adkins and/or Counsel. That statement alone recognizes that she may have had some complaints, and potentially, claims, against Dr. Adkins. Thus, on this record, we cannot find any error, much less clear error, in the district court's findings, nor in the evidence it relied upon to making those findings.

Next, we find no merit to Counsel's claim that the district court erred in applying Rule 1.9(a) of the Georgia Rules of Professional Conduct, which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

A violation of this rule depends on whether: (1) there was a previous attorney-client relationship and, if so, (2) that relationship involved a matter substantially related to the current proceeding. <u>Jones v. InfoCure Corp.</u>, 2003 WL 22149656, at *2 (N.D. Ga. May 13, 2003); <u>see also</u> <u>Cox v. Am. Cast Iron Pipe Co.</u>, 847 F.2d 725, 728 (11th Cir.

10

1988). It is clear, as the district court found, that there was a "previous attorney-client relationship" between Counsel and Ms. Kornegay, and that Counsel's representation of Ms. Kornegay and Dr. Adkins is "not only logically and materially related, but the two involved exactly the same events, and both involved the present litigation."

On appeal, Counsel claim that Ms. Kornegay waived confidentiality with respect to the previous communications she had with Counsel because she filed an affidavit with the district court detailing Counsel's conflict of interest, because she filed a Georgia Bar complaint alleging ethical violations by Counsel, and because she filed a case in state court against Dr. Adkins. However, Counsel do not detail for us what confidences necessarily were revealed, how public these proceedings were, or how far they progressed. See Continental Tech., 927 F.2d at 1199.

Counsel also claim that Ms. Kornegay had no reasonable expectation when she hired Counsel that her communications would not be shared with Dr. Adkins. Counsel rely on Ms. Kornegay's statement that, "I assumed that [McGriff's] reason for coming to me and inquiring was because later on down the road he intended to file a discrimination suit for Dr. Adkins. But when I agreed to give him private information surrounding me, at that point I felt like he was going to do the same for me too." Yet this is not evidence that she authorized Counsel to share all her confidences with Dr. Adkins, nor even that she understood that McGriff would bring

11

a single lawsuit for both Ms. Kornegay and Dr. Adkins and that Dr. Adkins would be privy to every communication between McGriff and Ms. Kornegay. Indeed, McGriff could have secured a written waiver from Ms. Kornegay and a joint representation agreement with all parties, but did not. Further, when Ms. Kornegay terminated her representation with Counsel, she specifically refused to consent to the use of any of the Kornegays' communications with Counsel in Dr. Adkins's federal litigation.

Counsel further claim that they would not be taking a position "materially adverse" to Ms. Kornegay's interests by representing Dr. Adkins. However, Ms. Kornegay is adversely affected if information she previously disclosed to Counsel is used to undermine her trial testimony. The key issues in Dr. Adkins's federal case include whether he was available on July 16th, contrary to Ms. Kornegay's position that he told her that he was out of town, and whether he provided sufficient coverage for his patients in his absence (and indeed, Counsel admits that the facts surrounding this dispute -- including why HMC did not immediately treat Ms. Kornegay that day -- were "amongst the ultimate facts to be decided by the factfinder in this case").[6]

---

[6] Counsel's claim that Ms. Kornegay's testimony does not show that anyone contacted Dr. Adkins after she was admitted on July 16th is without merit. She specifically testified that after her admission that day, the nurse "said she paged him and he wasn't answering his pages." Further, Counsel have not provided us with any authority suggesting that the interests are not materially adverse simply because Ms. Kornegay's testimony may be inadmissible hearsay.

12

What's more, the fact that some of Dr. Adkins's and Ms. Kornegay's interests are aligned does not make up for the fact that they are materially adverse in other ways.

Counsel also contend that any injury to Ms. Kornegay's confidentiality can be remedied by having another attorney cross-examine Ms. Kornegay at trial. But the district court did not find this approach practical, and we agree. Counsel's use of Ms. Kornegay's confidential information may also be used in strategy and argument. We therefore find no error in the district court's findings or conclusions about Rule 1.9.

Finally, we reject Counsel's claim that the district court violated their right to due process by basing the disqualification decision in part on finding a clear appearance of impropriety because the "appearance of impropriety" factor was not argued in the Defendants' motion. As the record shows, the district court first found that Counsel had violated Georgia Rules of Professional Conduct 1.7 and 1.9, and then -- approaching the disqualification motion "with caution" -- considered a number of other factors, including the appearance of impropriety, before ordering disqualification. However, the notion of "appearance of impropriety" is in the case law surrounding Rule 1.9, see, e.g., Snapping Shoals Elec. Membership Corp. v. RLI Ins. Corp., 2006 WL 1877078, at *6 (N.D. Ga. July 5, 2006), and in one of the very cases the Defendants cited to the district court in the motion for disqualification -- Glover v. Libman, 578 F. Supp. 748, 766 (N.D. Ga. 1983). Because we have held

13

that a party receives fair notice sufficient for due process through "case law, court rules, or the codes of professional conduct," In re BellSouth Corp., 334 F.3d 941, 959 n.13 (11th Cir. 2003), we cannot conclude that Counsel were not apprised of this issue before the hearing. Moreover, to the extent that Counsel broadly assert that there was no appearance of impropriety, their argument does not specify why the issue surrounding Ms. Kornegay's knowledge of Dr. Adkins's whereabouts on July 16th was insufficient to create an appearance of impropriety, or how the district court otherwise erred in finding an appearance of impropriety. Accordingly, we affirm.

**AFFIRMED.**